**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERNARD GRIMM, In His Personal Capacity and d/b/a The Law Office of Bernard S Grimm, | Case No. 1:22-cv-01006-FYP |
| Plaintiff, | |
| v. | |
| PNC BANK, N.A., | |
| Defendant. | |

**PNC BANK, N.A.'S MOTION TO DISMISS THE COMPLAINT**
**IN ITS ENTIRETY AND TO STRIKE THE JURY DEMAND**
**RELATING TO PLAINTIFF'S BUSINESS ACCOUNTS**

Defendant, PNC Bank, N.A., by its undersigned attorneys at Ballard Spahr LLP, pursuant to Federal Rule of Civil Procedure 12(b)(6), seeks an Order: (1) dismissing all of Plaintiff's claims; and (2) if any claims concerning Plaintiff's Business Accounts survived dismissal, striking the related jury demand.[1] The basis for this Motion is set forth in the accompanying Statement of Points and Authorities and related Declaration and Exhibits, all of which are incorporated here by reference.

Respectfully Submitted,

BALLARD SPAHR LLP

Dated: June 6, 2022

/s/ *Jessica Hepburn Sadler*
John D. Sadler, Esq., Bar No. 483301
Jessica Hepburn Sadler, Esq., Bar No. 994571
1909 K Street, N.W., Suite 1200
Washington, D.C. 20006
Telephone: (202) 661-2200  Fax: (202) 661-2299
Email: sadlerj@ballardspahr.com
Email: sadlerjh@ballardspahr.com

*Attorneys for Defendant, PNC Bank, N.A.*

---

[1] The terms "Plaintiff" and "Business Accounts" are defined in PNC's Statement of Points and Authorities.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERNARD GRIMM, In His Personal Capacity and d/b/a The Law Office of Bernard S Grimm, | Case No. 1:22-cv-01006-FYP |
| Plaintiff, | |
| v. | |
| PNC BANK, N.A., | |
| Defendant. | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PNC BANK, N.A.'S MOTION TO DISMISS THE COMPLAINT**
**<u>IN ITS ENTIRETY AND TO STRIKE THE JURY DEMAND</u>**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ......................................................................................................... 1

II. BACKGROUND: SUMMARY OF PLAINTIFF'S ALLEGATIONS .......................... 4

III. LEGAL ARGUMENT ................................................................................................ 5

    A.    All of Plaintiff's Claims Pertaining to the Business Accounts Should Be
    Dismissed. ............................................................................................................. 5

        1.    The EFTA claim should be dismissed in its entirety, and with
        prejudice, because it is time-barred. ................................................... 6

        2.    Alternatively, the EFTA claim should be dismissed in part because
        the statute does not govern Plaintiff's Business Accounts. ...................... 7

        3.    Insofar as the CPPA claim concerns Plaintiff's Business Accounts,
        it should be dismissed with prejudice because Plaintiff is not a
        "consumer" and the Business Accounts were not used primarily for
        "personal, household, or family purposes." ................................................ 8

        4.    The CPPA claim should also be dismissed, in its entirety, because
        Plaintiff has not pleaded any actionable misrepresentation. ...................... 9

        5.    The bulk of Plaintiff's UCC claim should be dismissed with
        prejudice because it is time-barred. ......................................................... 11

        6.    Plaintiff's UCC claim also should be dismissed in its entirety, on
        the merits. ................................................................................................ 14

        7.    Plaintiff's breach of contract claim must be dismissed with
        prejudice because it is time-barred. ......................................................... 16

        8.    Plaintiff's negligence claim should be dismissed with prejudice
        pursuant to the economic loss doctrine. .................................................. 18

        9.    Alternatively, Plaintiff's negligent hiring/retention claim should be
        dismissed for failure to allege sufficient supporting facts. ...................... 19

        10.    The claim for aiding and abetting fraud must be dismissed both as
        time-barred and because Plaintiff has not pled facts to support the
        cause of action. ....................................................................................... 21

    B.    Insofar as Claims Relating to the Business Accounts Survive Dismissal,
    Plaintiff's Jury Demand Should be Stricken. ....................................................... 22

IV. CONCLUSION ........................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A.A. Action Collection Co. v. Dweck*,
    No. 11-364, 2015 U.S. Dist. LEXIS 130747 (D.N.J. Sept. 28, 2015) ....................................12

*Advance Dental Care, Inc. v. SunTrust Bank*,
    906 F. Supp. 2d 442, 445 (D. Md. 2012) ..............................................................................12

*AFT v. Bullock*,
    605 F. Supp. 2d 251 (D.D.C. 2009) .................................................................................3, 21

*Antoine v. United States Bank, N.A.*,
    821 F. Supp. 2d 1 (D.D.C. 2010) ...........................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................5, 10, 11

*Auto-Owners Ins. Co. v. Bank One*,
    852 N.E.2d 604 (Ind. App. 2006), *aff'd on other grounds* 879 N.E.2d 1086
    (Ind. 2008).............................................................................................................................13

*Ballard v. Branch Banking & Trust Co.*,
    284 F.R.D. 9 (D.D.C. 2012)....................................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................5

*Binns v. BB&T Bank*,
    377 F. Supp.3d 487 (E.D. Pa. 2019) .......................................................................................8

*Cannon v. Wells Fargo Bank, N.A.*,
    926 F. Supp. 2d 152 (D.D.C. 2013) ........................................................................................8

*Estate of Clark v. Toronto Dominion Bank*,
    No. 12-6259, 2013 U.S. Dist. LEXIS 39191 (E.D. Pa. Mar. 20, 2013)..................................17

*Dorsey v. Enter. Leasing*,
    78 F. Supp. 3d 353 (D.D.C. 2015) ......................................................................................6, 7

*Economides v. Gay*,
    155 F. Supp. 2d 485 (D. Md. 2001) ..........................................................................3, 19, 20

*In re Ellipso*,
    No. 09-158, 2011 Bankr. LEXIS 367 (D.D.C. Bankr. Feb. 7, 2011) .....................................19

*Firestone v. Firestone*,
   76 F.3d 1205 (D.C. Cir. 1996) ................................................................................. *passim*

*Fischer & Mandell LLP v. Citibank, N.A.*,
   No. 09-1160, 2009 U.S. Dist. LEXIS 54184 (S.D.N.Y. June 22, 2009) ...............................2, 7

*Ford v. ChartOne, Inc.*,
   908 A.2d 72 (D.C. 2006) ..........................................................................................8

*Frankeny v. Dist. Hosp. Partners, LP*,
   225 A.3d 999 (D.C. 2020) ....................................................................................9, 11

*G & R Corp. v. Am. Sec. & Trust Co.*,
   523 F.2d 1164 (D.C. Cir. 1975) ..............................................................................17

*Gold v. Merrill Lynch & Co.*,
   No. 09-318, 2009 U.S. Dist. LEXIS 61719 (D. Ariz. July 14, 2009).....................................18

*Grayson v. AT&T Corp.*,
   15 A.3d 219 (D.C. 2011) ...........................................................................................2

*Hawkins v. Nalick*,
   975 N.E.2d 793 (Ill. App. 2012) .............................................................................13

*Hawthorne v. Rushmore Loan Mgmt. Servs., LLC*,
   No. 20-393, 2021 U.S. Dist. LEXIS 163267 (D.D.C. Aug. 30, 2021) ...................................8

*Himmelstein v. Comcast of the Dist., L.L.C.*,
   908 F. Supp. 2d 49 (D.D.C. 2012) ..........................................................................18

*Husker News Co. v. Mahaska State Bank*,
   460 N.W.2d 476 (Iowa 1990) ................................................................................13

*Jeffries v. Dist. of Columbia*,
   916 F. Supp. 2d 42 (D.D.C. 2013) .............................................................6, 8, 9, 13

*Kowal v. MCI Commc'cn Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) ..................................................................................5

*Maynard v. PayPal, Inc.*,
   No. 18-259, 2019 U.S. Dist. LEXIS 130240 (N.D. Tex. Aug. 5, 2019)...................................7

*Mazanderan v. Indep. Taxi Owners' Ass'n*,
   700 F. Supp. 588 (D.D.C. 1988) ..............................................................................8

*Menichini v. Grant*,
   995 F.2d 1224 (3d Cir. 1993).............................................................................2, 12

*Murray v. Motorola, Inc.*,
    982 A.2d 764 (D.C. 2009) ....................................................................................9

*Pers Travel, Inc. v. Canal Square Assocs.*,
    804 A.2d 1108 (D.C. 2002) ................................................................................23

*Peters v. Riggs Nat'l Bank, N.A.*,
    942 A.2d 1163 (D.C. 2008) ..............................................................7, 16, 17, 18

*Presidential Bank, FSB v. 1733 27th St. SE LLC*,
    318 F. Supp. 3d 61 (D.D.C. 2018) .......................................................................3

*Prignoli v. Bruczynski*,
    No. 20-907, 2021 U.S. Dist. LEXIS 186052 (E.D.N.Y. 2021) ...............................7

*Regatos v. N. Fork Bank*,
    257 F. Supp. 2d 632 (S.D.N.Y. 2003).................................................................2, 7

*RLI Ins. V. Pohl, Inc.*,
    468 F. Supp. 2d 91 (D.D.C. 2006) ...................................................................3, 19

*Rodenbur v. Kaufmann*,
    320 F.2d 679 (D.C. Cir. 1963) ..............................................................................3

*Rodrigue v. Olin Emps. Credit Union*,
    406 F.3d 434 (7th Cir. 2005) ...............................................................................12

*Sandoe v. Lefta Assoc.*,
    559 A.2d 732 (D.C. 1989) ....................................................................................17

*Shames-Yeakel v. Citizens Fin. Bank*,
    677 F. Supp. 2d 994 (N.D. Ill. Aug. 21, 2009) ....................................................8

*Shaw v. Marriott Int'l, Inc.*,
    605 F.3d 1039 (D.C. Cir. 2010) ............................................................................8

*Silver v. Wells Fargo Bank, N.A.*,
    No. 16-382, 2016 U.S. Dist. LEXIS 164537 (D. Md. Nov. 29, 2016) ..................16

*Silver v. Wells Fargo Bank, N.A.*,
    No. 16-382, 2017 U.S. Dist. LEXIS 102073 (June 30, 2017), *recon. granted
    on other grounds*, 2017 U.S. Dist. LEXIS 134722 (D. Md. Aug. 22, 2017)....................20, 21

*Silverman v. Weil*,
    662 F. Supp. 1195 (D.D.C. 1987) ..................................................................21, 22

*Sloan v. Urban Title Servs., Inc.*,
    689 F. Supp. 2d 123 (D.D.C. Feb. 12, 2010) ......................................................11

*Tefera v. OneWest Bank, FSB,*
    19 F. Supp. 3d 215 (D.D.C. 2014) ...................................................................5, 10

*Tran v. Citibank, N.A.,*
    208 F. Supp. 3d 302 (D.D.C. 2016) ......................................................................6

*Travelers Cas. & Sur. Co. of Am. v. Wells Fargo Bank, N.A.,*
    374 F.3d 521 (7th Cir. 2004) ...............................................................................16

*United States v. Ross,*
    D.D.C. Criminal Case No. 21-231 (Aug. 17, 2021) ...........................................4, 5

*Wetherill v. Putnam Invs.,*
    122 F.3d 554 (8th Cir. 1997) ...............................................................................17

*Wike v. Vertrue, Inc.,*
    566 F.3d 590 (6th Cir. 2009) .................................................................................6

*Williams v. Bank of N.Y. Mellon,*
    169 F. Supp. 3d 119 (D.D.C. 2016) ......................................................................5

**Statutes**

18 U.S.C. § 1344 ...........................................................................................................4

15 U.S.C. 1693 .....................................................................................................1, 2, 6

D.C. Code § 28:3-110(a) ........................................................................................14, 15

D.C. Code § 28:3-118(g) ....................................................................................2, 12, 13

D.C. Code § 28:3-404 ............................................................................................1, 14

D.C. Code § 28:3-405 ............................................................................................1, 15

D.C. Code § 28:3-417(f) ..............................................................................................13

D.C. Code § 28:4-103(a) ..............................................................................................16

D.C. Code § 28:4-406(d)(2) ................................................................................. *passim*

D.C. Code § 28:4-208(f) ..............................................................................................13

D.C. Code § 28-3901 ..........................................................................................1, 2, 8

D.C. Code § 28-3904 ....................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 8(a) ........................................................................5, 21

Federal Rule of Civil Procedure Rule 9(b) ....................................................................21

Federal Rule of Civil Procedure Rule 12(b)(6)...................................................5, 6, 18

UCC Article 3 ..........................................................................................................12, 13

UCC § 1-202(f) ...................................................................................................................22

Defendant, PNC Bank, N.A. ("PNC"), by its undersigned attorneys at Ballard Spahr LLP, submits this Statement of Points and Authorities in support of its Motion and states as follows:

## I.   **INTRODUCTION**

Plaintiff, Bernard Grimm, acting both in his personal capacity and doing business as The Law Office of Bernard S. Grimm ("Plaintiff"), commenced this action by filing a Complaint against PNC. *See generally* Compl., ECF No. 1. Plaintiff alleges he held three PNC accounts: a personal account, titled as "Bernard S. Grimm" and ending in -9144 (the "Consumer Account"); his law firm operating account, titled as "The Law Office of Bernard S. Grimm" and ending in -3331 (the "Firm Operating Account"); and his firm's IOLTA account, titled as "The Law Office of Bernard S. Grimm IOLTA Client Trust Fund," and ending in -7628 (the "IOLTA Account").[2] *Id.* at ¶ 6. Plaintiff asserts that he deposited funds into those accounts, which were embezzled between 2016-2020 by the Law Office's employee Katherine Ross ("Ross"). *See, e.g.*, *id.* at ¶¶ 14-23.

Without distinguishing between his various accounts, or the account agreements governing them, Plaintiff asserts six claims for: (1) alleged violations the Electronic Funds Transfer Act, 15 U.S.C. 1693, *et seq.* (the "EFTA"); (2) alleged violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.* (the "CPPA"); (3) alleged violations of District of Columbia Code §§ 28:3-404 and 28:3-405, which represent the District's adoption of §§ 3-404 and 3-405 of the Uniform Commercial Code (the "UCC"); (4) breach of contract; (5) negligent hiring and/or retention of employees; and (6) aiding and abetting fraud. *See id.* at Counts I-VI.

---

[2]     The Firm Operating Account and IOLTA Account are hereafter collectively referred to as the "Business Accounts."

Through this Motion, PNC seeks two distinct forms of relief. First, each of Plaintiff's claims should be dismissed, either in whole or in part, for the following reasons:

- **The EFTA claim should be dismissed with prejudice, and in its entirety, as time-barred.** Plaintiff alleges that Ross embezzled funds between 2016 and 2020, and that he discovered Ross's theft in April 2020. However, this action was not commenced until April 2022. Because EFTA claims are subject to a one-year statute of limitations, *see* 15 U.S.C. § 1963m(g), this claim must be dismissed with prejudice.

- **Alternatively, the EFTA claim should be dismissed with prejudice as to the Business Accounts because the EFTA does not apply to bank accounts used primarily for commercial purposes.** *See, e.g., Fischer & Mandell LLP v. Citibank, N.A.*, No. 09-1160, 2009 U.S. Dist. LEXIS 54184, at *9-10 (S.D.N.Y. June 22, 2009); *Regatos v. N. Fork Bank*, 257 F. Supp. 2d 632, 638 n.10 (S.D.N.Y. 2003).

- **The CPPA claim must be dismissed with prejudice, in part.** The CPPA applies only to "consumers"—i.e., those who purchase, lease, or receive consumer goods or services for personal, household, or family purposes. *See* D.C. Code § 28-3901(a)(2)(A), (a)(2)(B)(i). Clearly, insofar as Plaintiff's CPPA claim concerns the Business Accounts, Plaintiff does not fall within that definition.

- **The CPPA claim should also be dismissed, in its entirety, because Plaintiff has not pleaded an actionable misrepresentation.** Because a misrepresentation is an essential element of a CPPA claim, Plaintiff's failure to allege such facts warrants dismissal. *See Grayson v. AT&T Corp.*, 15 A.3d 219, 251 (D.C. 2011).

- **The bulk of Plaintiff's UCC claim must be dismissed with prejudice, as time-barred.** Plaintiff's UCC claim is subject to a three-year statute of limitation. *See* D.C. Code § 28:3-118(g). Thus, if Plaintiff's UCC claim is premised on Business Account transactions that occurred more than three years before the Complaint was filed, it is time-barred. *See id.* The "discovery rule" cannot salvage those aspects of the claim. *See, e.g., Menichini v. Grant*, 995 F.2d 1224, 1230 (3d Cir. 1993) ("[M]ost courts have refused to apply the discovery rule to negotiable instruments, finding it inimical to UCC policies of finality and negotiability.").

- **The UCC claim also should also be dismissed in its entirety, on the merits.** Plaintiff asserts a lack of "good faith" and "ordinary care" under UCC §§ 3-404 and 3-405. Because neither section applies here, Plaintiff's claim fails as a matter of law.

- **The breach of contract claim must be dismissed with prejudice because it is time-barred.** Plaintiff alleges that PNC breached the relevant account agreement by honoring checks on which Ross forged his signature. *See, e.g.*, Compl., ¶ 103. However, Plaintiff failed to commence this action within the ninety-day period

established by his account agreement. *See* Penrose Decl., Ex. A. Notably, that ninety-day period expired in 2016, pursuant to the UCC's "same wrongdoer" rule. *See* D.C. Code § 28:4-406(d)(2).

- **The negligent hiring/retention claim must be dismissed with prejudice under the economic loss doctrine.** Having asserted claims for breach of contract, Plaintiff cannot also assert claims for negligence. Such claims are barred by the economic loss doctrine. "[T]he District of Columbia has not authorized tort recovery for purely economic losses in a contract setting." *RLI Ins. V. Pohl, Inc.*, 468 F. Supp. 2d 91, 94 (D.D.C. 2006) (cleaned up).

- **The negligent hiring/retention claim also should be dismissed for failure to adequately allege supporting facts.** Although Plaintiff refers in the title of his claim to "negligent hiring," no facts are pleaded with in support of such theory. With respect to "negligent retention," to plead such a claim, a plaintiff must allege that the employer failed to use reasonable care in supervising or training the subject employees. *See Economides v. Gay*, 155 F. Supp. 2d 485, 489 (D. Md. 2001). No such facts have been alleged.

- **Finally, the claim for aiding and abetting fraud must be dismissed both as time-barred and because Plaintiff has not pleaded facts to support the cause of action.** This claim, like the breach of contract claim, is barred by UCC section 4-406(f). *See AFT v. Bullock*, 605 F. Supp. 2d 251, 262 (D.D.C. 2009). Further, the claim fails because Plaintiff has not alleged facts showing PNC's knowledge of Ross's fraud prior to June 28, 2020.

Second, if any claims relating to Plaintiff's Business Accounts survive dismissal, the jury demand relating to those Accounts must be stricken. In the account agreements governing the Business Accounts, Plaintiff expressly waived his right to a jury trial. *See, e.g.*, Penrose Decl., ¶ 6 & Ex. A. It is well-settled that parties "may in advance contract to waive a trial by jury." *Presidential Bank, FSB v. 1733 27th St. SE LLC*, 318 F. Supp. 3d 61, 80 (D.D.C. 2018) (cleaned up); *see also Rodenbur v. Kaufmann*, 320 F.2d 679, 684 (D.C. Cir. 1963). Plaintiff—an attorney by trade—should have known to read and understand the terms of his contracts with PNC, and he cannot credibly argue that he neither knowingly nor voluntarily waived his rights.

For all of these reasons, which are detailed below, PNC respectfully requests that the Court grant its Motion and dismiss the Complaint in its entirety. If any claims relating to Plaintiff's Business Accounts survive dismissal, the related jury demand should be stricken.

3

## II.    BACKGROUND: SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is a lawyer who operated The Law Office of Bernard S. Grimm (the "Firm"). *See* Compl., ¶ 1. He maintained and deposited funds into three bank accounts held at PNC: the Consumer Account and the two Business Accounts. *Id.* at ¶¶ 6, 12.

From 2016 to 2020, Plaintiff employed Ross as the Firm's office manager and bookkeeper. *Id.* at ¶ 14. Ross did not have authority to draw checks from and did not have signature authority over any of Plaintiff's PNC accounts. *Id.* at ¶¶ 16, 18. She was, however, authorized to cash her own paychecks and, in "rare instances," to "obtain[] funds on behalf of Plaintiff." *Id.* at ¶ 16.

Between 2016 and 2020, Ross embezzled hundreds of thousands of dollars from Plaintiff's Consumer Account and Business Accounts. *Id.* at ¶ 20. She stole Plaintiff's blank checks and created checks payable to herself, drawn on Plaintiff's accounts, forging Plaintiff's signature as payor. *Id.* Ross then cashed those checks at various PNC branches or deposited them into her personal account (at a non-PNC bank). *Id.* Ross also transferred funds from the Firm Operating Account and IOLTA Account to pay her personal credit card expenses. *Id.* at ¶ 23.

In March of 2020, a check drawn on the IOLTA Account was not honored due to insufficient funds. *Id.* In April of 2020, Plaintiff allegedly first discovered Ross's theft, notified PNC of Ross's theft, and contacted law enforcement. *Id.* at ¶ 41. In June of 2020, Ross's employment was terminated. *Id.* at ¶ 50.

In October 2020, Ross admitted to embezzling funds from Plaintiff's accounts, and she pleaded guilty to one count of bank fraud under 18 U.S.C. § 1344. *Id.* at ¶ 36; *see also* Judgment, *United States v. Ross,* D.D.C. Criminal Case No. 21-231 (Aug. 17, 2021), ECF No. 37. Although Plaintiff seeks over $725,000 in losses relating to Ross's theft "plus other damages suffered as a

proximate consequence," Compl., ¶ 107, Ross admitted to stealing only $320,000. *See* Judgment, *United States v. Ross*, D.D.C. Criminal Case No. 21-231 (Aug. 17, 2021), ECF No. 37.

III.   **LEGAL ARGUMENT**

    A.   **All of Plaintiff's Claims Pertaining to the Business Accounts Should Be Dismissed.**

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). *See Tefera v. OneWest Bank, FSB*, 19 F. Supp. 3d 215, 219 (D.D.C. 2014). Rule 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) (cleaned up).

To survive a Rule 12(b)(6) motion, a complaint must contain factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Williams v. Bank of N.Y. Mellon*, 169 F. Supp. 3d 119, 123 (D.D.C. 2016). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 679. In conducting this review, the Court should not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Tefera*, 19 F. Supp. 3d at 220 (quoting *Kowal v. MCI Commc'cn Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Nor should the Court "accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When deciding a Rule 12(b)(6) motion, "the Court may consider documents referenced in but not attached to a complaint without converting it to a motion for summary judgment." *Tran v. Citibank, N.A.*, 208 F. Supp. 3d 302, 305 (D.D.C. 2016). Here, the Court may consider the account agreements and bank statements for each of Plaintiff's subject accounts, all of which Plaintiff referenced. *See, e.g.*, Compl., ¶¶ 44, 101.

Here, Plaintiff's six claims pertaining to the Business Accounts should be dismissed with prejudice in their entirety. Plaintiff has not stated claims upon which relief can be granted, and, as explained below, amendment would be futile. *See, e.g.*, *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (holding that a dismissal with prejudice is warranted if "the allegation of other facts consistent with the challenged pleading could not possible cure the deficiency" (cleaned up)); *Jeffries v. Dist. of Columbia*, 916 F. Supp. 2d 42, 44 (D.D.C. 2013) ("The court may dismiss a claim with prejudice when amending the complaint would be futile.").

**1.    The EFTA claim should be dismissed in its entirety, and with prejudice, because it is time-barred.**

An EFTA claim must be filed "within one year from the date of the occurrence of the violation." *Dorsey v. Enter. Leasing*, 78 F. Supp. 3d 353, 357 (D.D.C. 2015) (citation omitted); *see also* 15 U.S.C. § 1693m(g) ("Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."). "[I]t is unclear whether the one year statute of limitation of the EFTA incorporates a discovery rule . . . ." *Dorsey*, 78 F. Supp. 3d at 357 (citing *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009)).

This Court need not resolve whether the "discovery rule" applies to the EFTA statute of limitations in this manner. Plaintiff alleges that Ross stole funds from his Consumer Account and Business Accounts between 2016 and 2020. *See, e.g.*, Compl., ¶ 20. He further alleges that he

6

discovered Ross's wrongdoing in April 2020. *See id.* at ¶ 41. However, he failed to commence this action until April 2022—several years after the subject transactions (that supposedly violated the EFTA), and well-more than one year after he discovered the issue. *See generally* Compl. Accordingly, Plaintiff's EFTA claim is time-barred and must be dismissed in its entirety and with prejudice. *See Dorsey*, 78 F. Supp. 3d at 357; *see also Peters v. Riggs Nat'l Bank, N.A.*, 942 A.2d 1163, 1171 (D.C. 2008).

> **2.     Alternatively, the EFTA claim should be dismissed in part because the statute does not govern Plaintiff's Business Accounts.**

As to Plaintiff's Business Accounts, Plaintiff's EFTA claim fails as a matter of law. To state a claim under the EFTA, a plaintiff must allege: 1) that the accounts in question were demand deposit, savings deposit, or other asset accounts; 2) that were established primarily for personal, household, or family purposes; and 3) that "the unauthorized electronic fund transfer was initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." *Prignoli v. Bruczynski*, No. 20-907, 2021 U.S. Dist. LEXIS 186052, at *12 (E.D.N.Y. 2021) (cleaned up). Plaintiff's claim fails under the second element. The Firm Operating Account and IOLTA Account, by their very nature, were not established or used primarily for personal, household, or family purposes. *See Fischer & Mandell*, 2009 U.S. Dist. LEXIS 54184, at *11 (finding that the EFTA does not govern an attorney's interest-bearing trust account); *see also Maynard v. PayPal, Inc.*, No. 18-259, 2019 U.S. Dist. LEXIS 130240, at *24-25 (N.D. Tex. Aug. 5, 2019) (dismissing EFTA claim where the plaintiff's pleading "only permits the court to draw the reasonable inference that the [subject account] was used for commercial transactions"); *Regatos*, 257 F. Supp. 2d at 638 n.10 (holding that "the account in question was purely commercial, making the EFTA inapplicable"); *cf Ballard v. Branch Banking & Trust Co.*, 284 F.R.D. 9, 12 (D.D.C. 2012)

(recognizing, in context of class certification proceedings, that EFTA applies to "only personal and not business accounts").[3]

Because this defect cannot be cured by amendment, the Business Account aspects of Plaintiff's EFTA claim must be dismissed with prejudice. *See Firestone*, 76 F.3d at 1209; *Jeffries*, 916 F. Supp. 2d at 44.

> **3.      Insofar as the CPPA claim concerns Plaintiff's Business Accounts, it should be dismissed with prejudice because Plaintiff is not a "consumer" and the Business Accounts were not used primarily for "personal, household, or family purposes."**

The CPPA applies only to "consumers"—those who purchase consumer goods or services for personal, household, or family purposes. D.C. Code § 28-3901(a)(2)(A), (a)(2)(B)(i). Because the CPPA polices trade practices "arising only out of consumer-merchant relationships," it "does not apply to commercial dealings outside the consumer sphere." *Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C. 2006) (cleaned up); *see Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1044 (D.C. Cir. 2010) (affirming dismissal of CPPA claim upon recognition that "the CPPA does not protect businesses engaged in commercial activity"); *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 173 (D.D.C. 2013) ("[I]f an individual purchases what might be considered a consumer good but does so for business reasons, that transaction is not subject to the CPPA.").[4]

---

[3]      *See also Binns v. BB&T Bank*, 377 F. Supp.3d 487, 491 (E.D. Pa. 2019) (recognizing "that EFTA does not apply to business accounts"); *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1006-07 (N.D. Ill. Aug. 21, 2009) (entering judgment against plaintiff on EFTA claim because subject checking account was used "in connection with their business").

[4]      *See also Hawthorne v. Rushmore Loan Mgmt. Servs., LLC*, No. 20-393, 2021 U.S. Dist. LEXIS 163267, at *38-42 (D.D.C. Aug. 30, 2021) (dismissing CPPA claim because the subject real property was held for investment and, thus, related payments to a loan servicing company were not made for personal, household, or family use); *Antoine v. United States Bank, N.A.*, 821 F. Supp. 2d 1, 7 (D.D.C. 2010) (dismissing CPPA claim where "the loan at issue was not a consumer transaction); *Mazanderan v. Indep. Taxi Owners' Ass'n*, 700 F. Supp. 588, 591 (D.D.C. 1988) (entering judgment against plaintiff who purchased goods for commercial purposes and, thus, was not a consumer under the CPPA).

By their nature, the Firm Operating Account and the IOTLA Account were not for personal, household, or family purposes. Grimm cannot plausibly plead otherwise. Thus, insofar as the CPPA claims relates to those accounts, it should be dismissed with prejudice. *See Firestone*, 76 F.3d at 1209; *Jeffries*, 916 F. Supp. 2d at 44.

### 4. The CPPA claim should also be dismissed, in its entirety, because Plaintiff has not pleaded any actionable misrepresentation.

The CPPA forbids "any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby," and it lists specific examples of violations in its subparts. D.C. Code § 28-3904. Plaintiff asserts that PNC violated the CPPA by: (1) "represent[ing] that goods or service have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have"; (2) represent[ing] that goods or services are of a particular standard, quality, grade, style, or model, if in fact they are of another"; (3) "misrepresent[ing] . . . a material fact which has a tendency to mislead"; (4) "pass[ing] off goods or services [as] those of another"; and/or (5) "represent[ing] that the subject of a transaction has been supplied in accordance with a previous representation when it ha[s] not." Compl., ¶ 88 (quoting D.C. Code § 28-3904(a), (d), (e), (s) & (u)).

To prevail on a CPPA claim under any of the above-referenced subparts, a plaintiff must establish that the defendant made a material misrepresentation. *See* D.C. Code § 28-3904(a), (d), (e), (s) & (u); *Murray v. Motorola, Inc.*, 982 A.2d 764, 784 n.33 (D.C. 2009) ("Of course, to prevail on a CPPA claim, a plaintiff must show that a misrepresentation or omission was material."); *see also Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020) ("For claims of misrepresentation, the statute . . . provides that it is a violation of the CPPA if the merchant 'misrepresented' or 'failed to state' a material fact."). Here, the CPPA claim should be dismissed

in its entirety because Plaintiff has not alleged any misrepresentation by PNC, let alone a material misrepresentation.

Plaintiff may argue otherwise based on his own conclusory allegations. He has stated:

93.     [T]hrough every fraudulent check that PNC did not question, investigate, or refuse to honor, PNC made representations that the fraudulent checks had the appropriate and required sponsorship and characteristics, while they actually did not. In honoring these fraudulent checks, PNC made material misrepresentations that these fraudulent checks met the particular standard and quality of a valid check. These representations are misleading as to the validity and legality of the checks.

94.     Each time that PNC and its agents, servants, and employees wrongfully honored a fraudulent check that had Plaintiff's forged signature, PNC and its agents, servants and employees made a material representation that the check was properly payable. These representations are misleading as to the validity and legality of the checks.

* * *

97.     Each time that PNC and its agents, servants, and employees wrongfully honored a fraudulent check, PNC made representations that the transactions in question were in accordance with its previous representation that a check must be properly signed by the person whose authority is on file.

Compl., ¶¶ 93-94, 97.

Those allegations are, however, insufficient. Plaintiff's bald and conclusory references to "representations" are implausible. He does not identify any such "representation." Instead, he merely makes reference to "representations," to mimic the language of the CPPA and associated case law. Such conclusory and unsupported references are insufficient. *See Iqbal*, 556 U.S. at 687 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (cleaned up)). And the Court need not accept Plaintiff's suggestion of implied representations. *See Tefera*, 19 F. Supp. 3d at 220 (stating that the Court should not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint" (cleaned up)). "A claim has facial plausibility when the plaintiff pleads factual content

10

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Moreover, Plaintiff has not plausibly alleged and cannot plausibly allege that any of the "representations" to which he points were "material." Under the CPPA, "a misrepresentation is material if a reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction or the maker of the representation knows or has reason to know that the recipient likely regards the matter as important in determining his or her choice of action." *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020) (cleaned up). Plaintiff has not alleged that PNC's supposed "representations" had any bearing on "his . . . choice of action" in any transaction, and, because he was not a party to those transactions— because Ross allegedly conducted them without his knowledge or consent—he cannot do so. Moreover, he has not alleged (and likely does not have a good-faith, factual basis to allege) that PNC knew or had reason to know that he "likely regard[ed] the matter as important in determining his . . . choice of action." *Id.* Accordingly, the CPPA claim should be dismissed. *See Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 123, 140 (D.D.C. Feb. 12, 2010) (entering summary judgment against plaintiff who failed to show the materiality of defendant's alleged misrepresentations).

## 5.   The bulk of Plaintiff's UCC claim should be dismissed with prejudice because it is time-barred.

Plaintiff alleges, pursuant to UCC §§ 3-404 and 3-405, that PNC failed to exercise ordinary care and good faith "in the paying and taking of . . . fraudulent checks[.]" Compl., ¶ 79; *see also id.* at ¶¶ 78-86. Although Plaintiff does not specify the dates of the checks at issue, he asserts that Ross embezzled funds between 2016 and 2020. *See, e.g.*, *id.* at ¶ 20.

Based on those allegations, portions of Plaintiff's claim are barred by UCC section 3-118(g). *See* D.C. Code § 28:3-118(g) (providing a three-year statute of limitations for any claim "to enforce an obligation, duty, or right arising under [Article 3] and not [otherwise] governed by this section"). Insofar as the UCC claim rests on any check taken or paid before April 11, 2019 (i.e., more than three years before the Complaint was filed), it is time-barred.

Plaintiff may attempt to save his claim by invoking the so-called "discovery rule." *See* Compl., ¶ 41 ("Plaintiff first discovered there was a fraudulent check scheme in his accounts in April 2020 . . ."). However, such an attempt would fail because the "discovery rule" does not apply to claims barred by UCC § 3-118(g). *See A.A. Action Collection Co. v. Dweck*, No. 11-364, 2015 U.S. Dist. LEXIS 130747, at *12 (D.N.J. Sept. 28, 2015) ("Plaintiffs' argument that the discovery rule should apply in order to extend the three-year statute of limitations period is unavailing, as the discovery rule is inapplicable to cases involving the U.C.C."); *see also Advance Dental Care, Inc. v. SunTrust Bank*, 906 F. Supp. 2d 442, 445 (D. Md. 2012) ("After a thorough review of the pertinent legal authorities, the Court concludes that the Maryland Court of Appeals would not apply the discovery rule to UCC conversion claims," which are governed by UCC § 3-118(g).).

"[M]ost courts have refused to apply the discovery rule to negotiable instruments, finding it inimical to UCC policies of finality and negotiability." *Menichini*, 995 F.2d at 1230. As explained by the United States Court of Appeals for the Seventh Circuit:

> Application of the discovery doctrine to a claim involving a negotiable instrument, by tolling the statute of limitations and giving the plaintiff a longer period of time in which to sue than the legislature provided, undermines the finality of transactions involving negotiable instruments and renders the negotiable instrument a less efficient vehicle of commerce.

*Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 446 (7th Cir. 2005); *see also id.* ("The finality of transactions promoted by an ascertainable definite period of liability is essential to the free

12

negotiability of instruments on which commercial welfare so heavily depends." (cleaned up)). And as explained by the Supreme Court of Iowa:

> As tempting a choice as [applying the 'discovery rule' to claims under Article 3 of the UCC] may be in an individual case . . . we think the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitation period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and 'certainty of liability' advanced by the U.C.C.

*Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 479 (Iowa 1990).

Moreover, application of the "discovery rule" would be contrary to legislative intent. Congress opted not to incorporate the "discovery rule" in D.C. Code § 28:3-118(g), even though it was incorporated elsewhere. *See, e.g.*, D.C. Code §§ 28:3-417(f), 28:4-208(f). Because Congress chose not to incorporate such language in section 3-118(g) (despite having done so elsewhere), the "discovery rule" should not be read into the statute. "[The] legislature's use of the discovery rule in some portions of the U.C.C. and not in [D.C. Code § 28:3-118(g)] indicates that the legislature did not intend for the discovery rule to apply to claims" like that asserted by Plaintiff here. *Auto-Owners Ins. Co. v. Bank One*, 852 N.E.2d 604, 611 (Ind. App. 2006), *aff'd on other grounds* 879 N.E.2d 1086 (Ind. 2008); *see also Hawkins v. Nalick*, 975 N.E.2d 793, 799 (Ill. App. 2012) (rejecting application of the "discovery rule" to claim governed by UCC § 3-118(g) because "the Illinois legislature incorporated the language of the discovery rule into other sections of the UCC" but "did not incorporate the discovery rule or the language of the rule into section 3-118(g)").

For all of these reasons, the "discovery rule" does not apply to Plaintiff's UCC claim. Thus, insofar as the UCC claims pertains to his Business Accounts, the time-barred portions of that claim should be dismissed with prejudice. *See Firestone*, 76 F.3d at 1209; *Jeffries*, 916 F. Supp. 2d at 44.

### 6. Plaintiff's UCC claim also should be dismissed in its entirety, on the merits.

Plaintiff, through his UCC claim, asserts that PNC acted with a lack of "good faith" and "ordinary care" when it allowed Ross to either cash checks drawn on or otherwise transfer funds from Plaintiff's accounts. *See* Compl., ¶¶ 78-86. He relies on UCC §§ 3-404 and 3-405 as the basis of the claim. *See id.* at ¶ 79. However, UCC §§ 3-404 and 3-405 do not apply to this case.

Under UCC section 3-404, a bank's failure to exercise "ordinary care" allows recovery against the bank only in the circumstances set forth in certain circumstances. *See* D.C. Code § 28:3-404(d) (limiting recovery for failure to exercise "ordinary care" to claims concerning "an instrument to which subsection (a) or (b) of this section applies"). Those circumstances are limited to situations in which:

1) an "imposter" induces "the issuer of an instrument to issue the instrument to the imposter, or to a person acting in concert with the imposter, by impersonating the payee . . . or a person authorized to act for the payee";

2) the person identified as payee "is a fictitious person"; or

3) the "person whose intent determines to whom an instrument is payable (section 28:3-110(a) or (b)) does not intend the person identified as payee to have any interest in the instrument[.]"

D.C. Code § 28:3-404(a), (b). None of those circumstances are alleged here.

First, Plaintiff does not allege that Ross induced anyone to issue the subject checks by impersonating the payee.

Second, Plaintiff does not allege that any of the checks at issue were payable to a fictitious person.

Third, Plaintiff does not allege that the "person whose intent determine[d] to whom" the subject checks were payable did "not intend [Ross] to have any interest" in those checks. Plaintiff's intent is irrelevant. Because Ross issued and signed the checks at issue, *see* Compl., ¶¶ 20-21, her

14

intent is dispositive. *See* D.C. Code § 28:3-110(a) ("The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument."). Obviously, Ross intended that she (as payee) would have an interest in the checks she made out to herself.

Similarly, Plaintiff finds no relief in UCC § 3-405. Section 3-405 allows recovery against a bank "if an employer entrusted an employee with responsibility with respect to the instrument and the employee . . . makes a fraudulent indorsement of the instrument," and the bank "fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss from the fraud . . . ." D.C. Code § 28:3-405(b). Again, Plaintiff's own allegations foreclose relief. As alleged in the Complaint, Ross had no authority regarding any of the subject checks. *See, e.g.*, Compl., ¶¶ 17-18 ("At no time ever during her employment at Plaintiff's law firm did Ross have authority to initiate disbursement of funds from Plaintiff's bank accounts. . . . Additionally, Plaintiff never gave Ross signature authority over any accounts, including the three accounts at issue here.").

Because Plaintiff either has not alleged facts implicating UCC sections 3-404 and 3-405, or has expressly pleaded facts foreclosing the application of those sections, the UCC claim (insofar as it relates to the Business Accounts) should be dismissed. Such dismissal should be with prejudice, as Plaintiff cannot cure this deficiency without contradicting the facts already alleged. *See Firestone*, 76 F.3d at 1209 (holding that a dismissal with prejudice is warranted if "the allegation of other facts ***consistent with the challenged*** pleading could not possible cure the deficiency" (cleaned up) (emphasis added)).

7.      **Plaintiff's breach of contract claim must be dismissed with prejudice because it is time-barred.**

Plaintiff alleges that PNC breached the "the Account Agreements for [the] Business Accounts" by failing to "only honor checks that were signed by an authorized signer as listed on the signature card." Compl., ¶ 101; *see also id.* at ¶ 102-104 (alleging that PNC honored checks with forged signatures and failed to compare such forged signatures to Plaintiff's signature card).

Inarguably, that claim is time-barred. Under the UCC, a bank customer "who does not within one year after the [associated account] statement or items are made available to the customer . . . discover and report the customer's unauthorized signature on . . . the item is precluded from asserting against the bank the unauthorized signature . . . ." D.C. Code § 4-406(f). Notably, "the period precluding claims for all fraudulent checks written by the same wrongdoer begins to run *from the date of the first fraudulent check*, rather than a separate period of repose for each fraudulent check." *See Peters*, 942 A.2d at 1167 n.6 (emphasis added) (citing D.C. Code § 28:4-406(d)(2)); *see also Travelers Cas. & Sur. Co. of Am. v. Wells Fargo Bank, N.A.*, 374 F.3d 521, 525 (7th Cir. 2004) (holding that UCC "section 4-406(d)(2) provides that the drawer of a check . . . can't complain about the check's alteration 'by the same wrongdoer' who had previously altered a check of the drawer, if the drawer would have discovered the alteration simply by comparing the bank's statement . . . with its own records"); *Silver v. Wells Fargo Bank, N.A.*, No. 16-382, 2016 U.S. Dist. LEXIS 164537, at *8 n.9 (D. Md. Nov. 29, 2016) ("The repeater rule applies in cases where the same wrongdoer repeatedly forges the customer's signature or alters instruments. § 4-406(d)(2).").

Moreover, a bank may shorten that one-year period through its customer contracts (i.e., its account agreements). *See* D.C. Code § 28:4-103(a) (providing that "the provisions of this article may be varied by agreement"); *see also Peters*, 942 A.2d at 1167-68 (holding that bank could

shorten one-year period set by UCC section 4-406(f) to just sixty days, through the terms of its account agreement).

And the "discovery rule" cannot be used to toll the period set by statute (or otherwise set by contract). *See* D.C. Code § 4-406(f) (expressly stating that the one-year period applies "[w]ithout regard to care or lack of care of either the customer or the bank"); *see also G & R Corp. v. Am. Sec. & Trust Co.*, 523 F.2d 1164, 1170 (D.C. Cir. 1975) ("An apparent justification for the protection afforded to the bank in section 4-406 is that forged signatures of the drawer should be easily ascertainable by the customer, but not by the bank.").[5]

Here, the account agreement governing Plaintiff's Business Accounts shortened the one-year period to ninety days:

> IN NO EVENT WILL WE BE LIABLE FOR ANY UNAUTHORIZED TRANSACTION OR ANY FORGERY, UNAUTHORIZED SIGNATURE OR ALTERATION OF AN ITEM ON YOUR ACCOUNT THAT IS NOT BROUGHT TO OUR ATTENTION WITHIN 90 DAYS OF THE DATE ON WHICH YOUR STATEMENT OR REPORT WAS RECEIVED OR MADE AVAILABLE TO YOU.

Penrose Decl., Ex. A, Business Account Agreement, 9.

Plaintiff cannot meaningfully argue that the ninety-day period set by his Account Agreement provides too short a period of time. Courts in both this District and elsewhere "have consistently upheld the contractual shortening of the notice provision to periods of sixty days or

---

[5]        "Other jurisdictions have consistently characterized this U.C.C. provision as a statute of repose, as opposed to a statute of limitations." *Peters*, 942 A.2d at 1167 (collecting cases). A statute of repose "establishes an absolute time period within which legal proceedings must be initiated, regardless of when a cause of action accrues." *Id.* (quoting *Sandoe v. Lefta Assoc.*, 559 A.2d 732, 736 n.5 (D.C. 1989)). Because section 4-406(f) is a statute of repose, the "discovery rule" does not apply. *See Peters*, 942 A.2d at 1168-69; *see also Wetherill v. Putnam Invs.*, 122 F.3d 554, 556-57 (8th Cir. 1997); *Estate of Clark v. Toronto Dominion Bank*, No. 12-6259, 2013 U.S. Dist. LEXIS 39191, at *29 (E.D. Pa. Mar. 20, 2013).

shorter." *Peters*, 942 A.2d at 1168 (upholding a sixty-day period). Because the U.C.C. provision allocates the duty of discovering forgeries or unauthorized transactions to the customer, a reasonable contraction of the discovery and notice period encourages due diligence by the customer in inspecting account statements; it also promotes the U.C.C.'s goal of finality." *Id.*

Here, account statements were issued to Plaintiff each month during the period he places at issue (from 2016-2020). *See* Penrose Decl., ¶ 9 & Ex. C.[6] Plaintiff, however, did not report any specific issues to PNC until June 28, 2020. *See* Compl., ¶ 51.[7] Thus, insofar as his breach of contract claim is based on PNC's handling of checks, his claim must be dismissed as time-barred. The Complaint was not filed within ninety days of the first fraudulent check. *See* Penrose Decl., Ex. A, Business Account Agreement, 9 (establishing ninety-day period); *Peters*, 942 A.2d at 1167 n.6 (recognizing, pursuant to D.C. Code § 4-406(d)(2), that "the period precluding claims for all fraudulent checks written by the same wrongdoer begins to run from the date of the first fraudulent check, rather than a separate period of repose for each fraudulent check").

### 8.   Plaintiff's negligence claim should be dismissed with prejudice pursuant to the economic loss doctrine.

The economic loss doctrine "bars a plaintiff from recovering for purely economic losses under a tort theory of negligence." *Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 58 (D.D.C. 2012); *see also RLI Ins Co.*, 468 F. Supp. 2d at 94 (finding that "the District of

---

[6]      The Court may consider Plaintiff's account statements without converting this Rule 12(b)(6) motion into a summary judgment motion. Plaintiff cannot dispute their authenticity. *See Gold v. Merrill Lynch & Co.*, No. 09-318, 2009 U.S. Dist. LEXIS 61719, at *6 (D. Ariz. July 14, 2009). Moreover, "in order to establish injury on which to base his claims," Plaintiff "necessarily relies on demonstrating that the allegedly forged documents led to actual withdrawals from his [PNC] account. The account statements provided by [PNC] do precisely that and thus satisfy the requirements of the incorporation doctrine." *Id.* (cleaned up).

[7]      Plaintiff alleges that he provided PNC notice of "were issues in the accounts" in April 2020. *See* Compl., ¶ 49. However, he apparently did not provide detail as to specific transactions until June 28, 2020. *See id.* at ¶ 51.

Columbia has not authorized tort recovery for purely economic losses in a contract setting" (cleaned up)).

Throughout his negligence count, Plaintiff faults PNC for failing to properly supervise employees whose alleged acts (or inaction) supposedly allowed Ross to embezzle Plaintiff's funds. *See generally* Compl., ¶¶ 108-133 (repeatedly referring to the checks Ross cashed or deposited without Plaintiff's consent). This is, in effect, just a re-characterization of his breach of contract claim. After all, "[a] corporation is generally not distinct from its agents, employees, officers, and directors." *In re Ellipso*, No. 09-158, 2011 Bankr. LEXIS 367, at *36 (D.D.C. Bankr. Feb. 7, 2011). Plaintiff should not be permitted to end-run the dismissal of his breach of contract claim by finger-pointing at PNC's employees, rather than PNC itself.

Accordingly, Plaintiff's negligent hiring/retention claim should be dismissed with prejudice.

### 9. Alternatively, Plaintiff's negligent hiring/retention claim should be dismissed for failure to allege sufficient supporting facts.

If for some reason Plaintiff's negligence claim is not dismissed with prejudice under the economic loss doctrine, then it should be dismissed for failure to allege sufficient supporting facts. Although labeled as "Negligent Hiring and/or Retention of Employees," Plaintiff alleges no facts in support a "Negligent Hiring" claim. Indeed, no mention is made of the circumstances surrounding any employee's hiring. Thus, that aspect of his claim should be dismissed immediately.

The "Negligent Retention" aspect of Plaintiff's claim fares no better. To plead a negligent retention claim, a plaintiff must allege facts to show "that the employer failed to use reasonable care . . . in supervising or training the employee." *Economides*, 155 F. Supp. 2d at 489 (cleaned up). Where a plaintiff fails to allege facts showing "a specific instance in illustrating that [the

employer-defendant] failed to use reasonable case in employing [a] particular employee," the plaintiff's claim must be dismissed. *Id.*; *see also Silver v. Wells Fargo Bank, N.A.*, No. 16-382, 2017 U.S. Dist. LEXIS 102073, at *23-24 (June 30, 2017), *recon. granted on other grounds*, 2017 U.S. Dist. LEXIS 134722 (D. Md. Aug. 22, 2017).

Plaintiff does not allege such facts. Instead, he faults PNC's employees for allegedly failing to safeguard his funds from Ross. He claims that those employees "did not take any action to stop Ross from continuing her fraudulent scheme." Compl., ¶ 121. He further alleges that "[t]he fact that Ross' fraud scheme operated without raising the suspicions of a single PNC employee for over 4 years is evidence of the incompetence of the PNC employees, and PNC's negligence in supervising and retaining these employees." *Id.* at ¶ 126.

Those allegations are, however, grossly insufficient. "[A]n employer's liability in this regard is not to be reckoned simply by the happening of the injurious event" (i.e., the plaintiff's alleged loss). *Silver*, 2017 U.S. Dist. LEXIS 102073, at *23-24 (quoting *Economides*, 155 F. Supp. 2d at 489). In *Silver*, the court recited the plaintiff's contention that the defendant banks' employees' failure to question 215 allegedly fraudulent checks was "extreme evidence of the incompetence of both banks' employees and proof that they were inadequately trained and retained." *Id.* at *25 (quoting the plaintiff's amended complaint). The *Silver* court then rejected the plaintiff's position, stating: "This allegation is conclusory and points only to the 'injurious event' as evidence of negligent supervision. This is not adequate to plead a cause of action for negligent supervision and/or retention." *Id.*

Because Plaintiff has not alleged facts showing that PNC failed to use reasonable care in retaining specific employees (whether identified by name or description), his negligent retention claim must be dismissed. Just like the plaintiff in *Silver*, Plaintiff is wrong to suggest that the

20

defendant bank's employees' alleged inaction, when presented with the checks at issue, is evidence

of negligent retention. *Compare* Compl., ¶ 126, *with Silver*, 2017 U.S. Dist. LEXIS 102073, at

*25. Plaintiff's claim is based on nothing more than his allegation of the "injurious event," which

is legally insufficient. *Silver*, 2017 U.S. Dist. LEXIS 102073, at *25.

> **10.   The claim for aiding and abetting fraud must be dismissed both as
> time-barred and because Plaintiff has not pled facts to support the
> cause of action.**

In the last Count of his Complaint, Plaintiff seeks damages on the theory that PNC aided

and abetted Ross's fraud. *See, e.g.*, Compl., ¶¶ 170-72. This claim, like Plaintiff's claim for breach

of contract, is barred by the statute of repose set forth in UCC section 4-406(f), which relates back

to the date of the first allegedly fraudulent check by UCC section 4-406(d)(2). *See* D.C. Code

§§ 28:4-406(d)(2), (f); *see also AFT*, 605 F. Supp. 2d at 262 (applying UCC § 4-406(f) to bar

aiding and abetting claims).

Further, the claim fails under Rule 8(a). "To meet the pleading requirements of an aiding

and abetting charge sounding in fraud," Plaintiff must allege with the particularity required by

Rule 9(b) that: (1) the party whom PNC allegedly aided, Ross, performed a wrongful act that

caused injury; (2) PNC was aware of its role contributing to Ross's fraud when it rendered its

banking services; and (3) PNC knowingly and substantially assisted Ross in her fraud. *Silverman*

*v. Weil*, 662 F. Supp. 1195, 1200 (D.D.C. 1987).

Assuming *arguendo* that Ross's guilty plea for bank fraud is sufficient to satisfy the first

element, *see id.*, Plaintiff has not adequately alleged the remaining elements of his claim. The fact

that PNC provided routine banking services during the period in which Ross was stealing from

Plaintiff is not evidence of aiding and abetting. At most, these allegations "are more akin to

negligence claims – that reasonably competent [bankers] should have discovered [Ross's] fraud[.]"

*Id.* But such alleged negligence "cannot be transformed into allegations of aiding and abetting

without a specific showing that **these** [bankers] knew of and substantially assisted [Ross] in his schemes. *Id.*

To be sure, Grimm alleges that he generally alerted PNC to the possibility of fraudulent transactions in April 2020, and provided more detail on June 28, 2020. *See* Compl., ¶¶ 160-62. However, he does not allege facts (as contrasted with bare legal conclusions) to show that PNC actually knew of its role in contributing to Ross's fraud, let alone that PNC knowingly assisted her in such fraud. Of course, under the UCC, a bank does not acquire knowledge (defined as "actual knowledge") of transactions processed by automated means, without the assistance of a bank employee. *See* UCC § 1-202(a), (f) (establishing the circumstances under which a bank might acquire "knowledge"). Here, Plaintiff does not allege the manner in which Ross transferred funds out of his accounts (i.e., by automated means or with teller assistance). Thus, even for transactions after June 28, 2020, he fails to state a claim of aiding and abetting.

**B.    Insofar as Claims Relating to the Business Accounts Survive Dismissal, Plaintiff's Jury Demand Should be Stricken.**

"In diversity as well as other actions, '[t]he right to a jury trial in the federal courts is to be determined as a matter of federal law[.]'" *Presidential Bank*, 318 F. Supp. 3d at 80 (quoting *Simler v. Conner*, 372 U.S. 221, 222 (1963) (alterations in original). Under federal law, parties "may in advance contract to waive a trial by jury." *Id.* (quoting *Rodenbur*, 320 F.2d at 684; *see also Pers Travel, Inc. v. Cancal Square Assocs.*, 804 A.2d 1108, 1111 (D.C. 2002) ("It is clear that the parties to a contract may be prior written agreement waive the right to a jury trial." (citation omitted)).

Here, Plaintiff repeatedly agreed to waive his right to a jury trial on any issues arising from or relating to his Business Accounts. He did so in each iteration of the Account Agreement for those accounts. *See* Penrose Decl., Ex. A, Business Account Agreement, 9; *see also id.* at Ex. B.

Plaintiff is bound by that contractual waiver. "[O]ne who signs a contract has a duty to read it and is obligated according to its terms." *Pers Travel*, 804 A.2d at 1110. As an attorney, Plaintiff was certainly able to read and comprehend the Business Account Agreement's terms. *See id.* ("In the absence of fraud, duress, or mistake, one who signs a contract which he had an opportunity to read and understand is bound by its provisions unless enforcement of the agreement should be withheld because the terms of the contract are unconscionable."). The fact that the jury trial waiver was but one part of a larger contract is of no consequence. *See id.* at 1112.

Plaintiff, an attorney who at the time practiced in this District, knowingly and voluntarily waived his right to a jury trial on any claims concerning or relating to his Business Accounts in the Account Agreements governing those accounts. Based on that jury trial waiver, this Court should strike Plaintiff's jury demand insofar as it relates to claims concerning his Firm Operating Account and IOLTA Account.

## IV.   CONCLUSION

Based on the foregoing, PNC respectfully requests that the Court grant its motion and: (1) dismiss the Complaint in its entirety; and (2) strike Plaintiff's jury demand if any claims relating to the Business Accounts survive dismissal.

                                   Respectfully Submitted,

                                   BALLARD SPAHR LLP

Dated: June 6, 2022               /s/ *Jessica Hepburn Sadler*
                                   John D. Sadler, Esq., Bar No. 483301
                                   Jessica Hepburn Sadler, Esq., Bar No. 994571
                                   1909 K Street, N.W., Suite 1200
                                   Washington, D.C. 20006
                                   Telephone: (202) 661-2200
                                   Facsimile: (202) 661-2299
                                   Email: sadlerj@ballardspahr.com
                                   Email: sadlerjh@ballardspahr.com

                                   *Attorneys for Defendant, PNC Bank, N.A.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2022, a true and correct copy of the foregoing was served

via CM/ECF on all counsel of record and via first class mail:

Barry Coburn, Esquire
Coburn & Greenbaum PLLC
1710 Rhode Island Avenue, NW
Second Floor
Washington, DC  20036

/s/ *Jessica Hepburn Sadler*
Jessica Hepburn Sadler

24